MT. AIRY PLUMBING AND HEATING, INC. ET AL. *v.* GREY DAWN DEVELOPMENT COMPANY, INC.

[No. 57, September Term, 1964.]

*Decided December 7, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*Robert J. Cooke,* with whom was *William E. Hammond* on the brief, for the appellants.

*William B. Dulany,* with whom was *James W. Davis* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

On March 29, 1963, the appellants, Mt. Airy Plumbing and Heating, Inc. and County Floor Service, Inc., each filed a mechanics' lien claim against the property of Reba Kurtz located in Baltimore County for labor and materials furnished by them as subcontractors during the construction of a dwelling on the property. On May 16, 1963, the appellee, Grey Dawn Development Company, Inc. (which, it was stipulated, was acting individually and as agent for Mrs. Kurtz, the owner), filed a bill in equity in the Circuit Court for Baltimore County, pursuant to Maryland Rule BG75 a, to compel the appellants to prove the validity of their liens or have them declared void. The Chancellor, after taking testimony, decreed on December 18, 1963, that the liens were null and void, and the lien claimants appealed.

In July 1961 Johnnie M. Martinez entered into a contract with the Grey Dawn Development Company, Inc., under which he became the general contractor for the construction of a prefabricated house on Mrs. Kurtz's property. The contract provided that Martinez was to be paid in three installments as the work progressed, and a final one of $2500 upon completion of the house. (It was conceded that at the time of trial all but the last installment had been paid.) Martinez subcontracted the plumbing and heating work to Mt. Airy Plumbing & Heating, Inc., and the flooring and bathroom tile work to County Floor Service, Inc.

The two subcontractors are closely related to each other, having a common president. They had subcontracted work on various construction jobs from Martinez for some years, and were working on other Martinez jobs at the time they entered the Kurtz contracts. The evidence indicates that they treated all of their charges against Martinez as his "open account", and that it was their practice to request installment payments from him as work progressed, applying payments received to the oldest charge in the "open account".

Mt. Airy and County Floor began their work on the Kurtz house in August 1961. After most of their work was completed, County Floor stopped work on the house on November 29, 1961, and Mt. Airy did likewise on December 4, 1961. According to testimony of Albert K. Ross, president of the two corporations, and of Woodrow Franklin, vice-president and manager of Mt. Airy, the work was stopped because they had not been paid by Martinez, and they deemed it unwise to furnish more work and materials until they received a substantial payment. Ross and Franklin also testified that after they had had several conversations with Martinez the two subcontractors decided to go back to work and complete their respective jobs because he requested them to do so, explaining that he would not receive any more money from the development company until the house was finished, at which time they would be paid. Martinez testified he could not recall any such conversation, but admitted he may have made the statements.

In September 1962 the appellants returned to the house, gaining access through a broken window, and completed their work by October 2, 1962. Ross testified that County Floor waxed the hardwood floors, installed the last 50 square feet of ceramic tile in the bathroom, installed towel bars and soap dishes and repaired certain damages caused by other subcontractors. According to Franklin, Mt. Airy did the following work: "final completion of the job and a cleanup of everything", the oil furnace was checked out and a defective control was replaced, some pipe was run to tie the water system into a pump which pumped water from a well (water had not previously been brought into the house), the pump was started and the water lines checked for leaks and then the system was drained because winter was approaching. Franklin stated that although the water pump had been installed earlier it could not be checked because there was no electricity in the house. According to the two mechanics' lien claims, in the performance of the work mentioned a Mt. Airy employee worked four hours on September 27, 1962, and four hours on October 2, 1962, and County Floor's employees performed four, nine and one-half, and two hours of work on September 28, 29 and October 2, 1962, respectively. There was no contradiction as to the dates, hours

spent or types of work done, or that the work was required under the subcontracts.

The two subcontractors gave written notice to Mrs. Kurtz of their intention to claim liens within ninety days after October 2, 1962, and filed their lien claims within six months after the same date, pursuant to Code (1957), Art. 63, secs. 11 and 23.

The Chancellor held that the work done by the two subcontractors in September and October, 1962, was of too minor a character to extend the period within which a mechanics' lien must be filed, and, in holding the liens void, he stressed the fact that the work had not been requested by the owner or her agent. However, we are constrained to conclude that the learned Chancellor misapplied the law to the facts of the case.

It is true that we have said in such cases as *Harrison v. Stouffer,* 193 Md. 46, 51, 65 A. 2d 895 (1949), and *District Hgts. Apts. v. Noland Co.,* 202 Md. 43, 52, 95 A. 2d 90 (1953), that where the reason for the furnishing of small additional items is only to circumvent the statutory requirement, the time for filing will not be extended. But we think the case before us is controlled by the further rule stated in the *Noland Co.* case, supra (at pp. 52-53 of 202 Md.) :

> "But where a claimant, after a contract is substantially completed, does additional work or furnishes additional material which is necessary for the proper performance of his contract, and which is done in good faith at the request of the owner *or for the purpose of fully completing the contract,* and not merely as a gratuity or act of friendly accommodation, the period for filing the lien will run from the doing of such work or the furnishing of such materials, irrespective of the value thereof. * * *" (Emphasis supplied.)

Thus it is apparent that if the furnishing of the additional work or material is necessary for the proper completion of the contract, it need not be done at the request of the owner. This rule was briefly referred to in *Brosenne v. Warthen,* 226 Md. 168, 172 A. 2d 485 (1961), a case in which the facts are analogous to those before us here. There, a subcontractor returned to a house approximately five months after he had installed

the plumbing and heating fixtures, and installed a thermostat for an oil furnace which was necessary for the functioning of the heating system. In affirming the lower court's decision that notice of intention to claim a lien, given to the owner within three months after installation of the thermostat, was timely, we noted that the acts and omissions of the owner may have prevented the subcontractor from full performance earlier, but we were careful to point out that the lower court's decision could be upheld either for that reason or because the additional work was necessary for the performance of the contract.

Under the facts before us, County Floor, among other things, installed 50 square feet of ceramic tile and certain bathroom fixtures, and Mt. Airy, among other things, brought water into the house by laying pipe to connect the pump with the water system, and tested the system. Obviously, the appellants' work under their contracts was not complete until these things were accomplished. The earlier and later work was performed under a single complete contract held by each subcontractor, and in such a case "the crucial date is the date of completion, even though most of the work and materials is furnished prior to the time specified in the statute". *G. Edgar Harr Sons v. Newton,* 220 Md. 618, 622, 155 A. 2d 480 (1959). See also *Reisterstown Lumber Co. v. Reeder,* 224 Md. 499, 168 A. 2d 385 (1961). No bad faith was shown. The lapse of time was explained by the testimony of the representatives of the appellants. Moreover, the pump and the water system could not have been checked when the earlier work was done because electricity had not been brought into the house.

We hold that the work and materials supplied by the appellants in September and October, 1962, were necessary for the proper performance of their contracts, that the notices of intention to claim liens and the filing of the lien claims were timely, and that therefore the appellants are entitled to liens for the proper amounts due under their contracts. Thus the lower court's decree must be reversed.

However, since the Chancellor's decision holding the liens void was based upon the stated conclusion that they were not filed within the six months' period required by statute, he did not, of course, make any findings of fact as to the proper amounts

owed upon the lien claims. Some conflict developed in the testimony as to the correct amounts due. Mt. Airy's claim was for $2381.00, and County Floor's was for $472.10. The witness Ross testified that these were the total amounts due under the two contracts with Martinez and that there were no credits thereon. He admitted that he had received some payments from Martinez before and after the subcontractors left the job late in 1961, but he asserted that these payments were credited (pursuant to his course of dealings with Martinez and under his "open account" system of keeping records on all of Martinez's jobs) on other accounts which were older than the Kurtz job. On the other hand, Martinez at first stated in his testimony that he had indicated on several payment checks that they applied to the Kurtz job, although he later said he thought there might have been only one. Ross denied receiving any such "labeled" checks and none was produced in evidence. If any of the payments were clearly tied to the Kurtz job, the property owner is entitled to credit *pro tanto* on the lien claims. Therefore the case will be remanded so that the Chancellor may make findings of fact (after the taking of additional testimony, if he finds it necessary) as to the correct amounts owed upon the two claims, and pass a decree holding the liens valid in such amounts.

> *Decree reversed, and case remanded for further proceedings and for the passage of a decree in conformity with this opinion; costs to be paid by appellee.*