A. E. BIRK & SON PLUMBING &
HEATING, INC., et al.,
Plaintiffs-Respondents,

v.

MALAN CONSTRUCTION COMPANY et
al., Defendants-Appellants.

No. 37060.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 15, 1977.

Motion for Rehearing or for Transfer
Denied March 15, 1977.

612

Spradling, Drusch & Dillard, R. Howard Dillard, Cape Girardeau, for defendants-appellants.

Finch, Bradshaw, Strom & Steele, Limbaugh, Limbaugh & Russell, Vogel & Frye, Cape Girardeau, for plaintiffs-respondents.

KELLY, Presiding Judge.

This appeal is from a judgment of the Circuit Court of the Cape Girardeau Court of Common Pleas in favor of A. E. Birk & Sons Plumbing and Heating, Inc., Cape Ready Mix Company, Inc., Riverside West Builders Supply, Inc., and Southern Illinois Stone Company and against Crites and Sailer Construction Company in connection with the construction of a K–Mart building in Cape Girardeau, Missouri, and the establishment of mechanics' liens against the property owned by defendant Malan Construction Company. A money judgment was also entered against Crites and Sailer Construction Company in favor of Rose Con, Inc., but Rose Con, Inc. was not awarded a mechanic's lien against the property. The judgments entered by the trial court, in this court-tried case, were as follows: Riverside West Builders Supply, Inc., $1,365.75; Southern Illinois Stone Company, $26,420.86; A. E. Birk & Sons Plumbing and Heating, Inc., $29,215.59; Cape Ready Mix Company, Inc., $31,704.34 and Rose Con, Inc., $3,399.44. Rose Con, Inc. has not appealed from the judgment denying it a mechanic's lien and subsequent to the institution of this appeal the mechanic's lien of Cape Ready Mix Company, Inc. was disposed of by agreement. The judgment against Crites and Sailer Construction Company has not been appealed by that company's Trustee in Bankruptcy.

The appellants are Malan Construction Company, the owner of the real estate, First National Bank of Minneapolis, Richard Roth, Trustee, the State of California Public Employees Retirement System, S. S. Kresge Company, and the Henry Ross Construction Company, the general contractor on the job. Crites and Sailer Construction Company was a sub-contractor for Ross on this project and the lien claimants were mechanics or materialmen who had worked for or furnished materials to Crites and Sailer Construction Company in connection with the K–Mart project.

At trial it was stipulated by and between the parties that any recoveries in the case

would depend upon the proof of mechanics' liens, inasmuch as no claim of direct debt was to be made against the property owner.[1]

In order to simplify the trial, the parties also entered into numerous stipulations and agreements leaving for determination by the trial court the following issues with respect to the parties:

A. E. Birk & Sons Plumbing & Heating, Inc.:

(1) was the mechanic's lien timely filed?

(2) was proper notice of the intent to file mechanic's lien given as required by law?

Riverside West Builders Supply, Inc.:

(1) was proper notice of intent to file mechanic's lien given as required by law?

Southern Illinois Stone Company:

(1) did this lien-claimant file a just and true account required by § 429.080 RSMo. 1969, as amended?

(2) was proper notice of intent to file mechanic's lien given as required by law?

(3) were the charges made reasonable?

One of the stipulations was that the lien-claimants filed mechanic's lien statements in the office of the Clerk of the Common Pleas Court of Cape Girardeau County on the dates set out:

| | |
|---|---|
| A. E. Birk & Sons Plumbing & Heating, Inc. | — March 15, 1974 |
| Riverside West Builders Supply, Inc. | — February 14, 1974 |
| Southern Illinois Stone Company | — February 22, 1974 |

A. E. Birk and Sons Plumbing & Heating, Inc., and the appellants stipulated that the only item of work and materials purported to have been performed on a date which would satisfy the lien filing requirements and render the lien timely filed as of March 15, 1974, was work and materials furnished by the plaintiff on November 16, 1973.

Upon completion of the trial the trial court entered an Order, Judgment and Decree containing extensive findings of fact and conclusions of law in support of its judgment for the parties as previously stated and establishing the mechanics' liens against the real estate.

On appeal the appellants contend that the judgment of the trial court should be reversed because (1) the property owner, Malan Construction Company, did not receive actual notice of respondents' intent to file mechanics' liens, (2) the trial court erred in awarding a decree establishing a mechanic's lien in favor of Birk (as respondent A. E. Birk & Sons Plumbing & Heating, Inc., shall hereinafter be identified) because the statement of mechanic's lien was not filed within four months after the account had accrued, and (3) the trial court erred in awarding Southern (as Southern Illinois Stone Company shall hereinafter be identified) a mechanic's lien for the reason that the tax lien filed by Southern was not a just and true account of the monies due it from Crites and Sailer Construction Company.

■ Our review of this court-tried case is governed by the principles announced in *Murphy v. Carron,* 536 S.W.2d 30, 32[1, 3] (Mo. banc 1976) and Rule 73.01 V.A.M.R., and we are required to sustain the judgment of the trial court unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. We are also cautioned by *Murphy v. Carron,* supra, to exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with a firm belief that the decree or judgment is wrong. We find none of the aforementioned infirmities in this judgment and we therefore affirm.

■ Malan Construction Company's first contention is that it did not receive actual

1. Malan Construction Company had taken a judgment against Crites and Sailer prior to the time this action was brought to trial. That judgment was in part, at least, based upon the amount of all the liens filed in this case. Crites and Sailer was in bankruptcy at the time of this trial.

notice of respondents' intention to file mechanics' liens and therefore all three of these liens must fail. This contention is without merit because each of the respondents filed their ten day notice of intent to file mechanic's lien with the Recorder of Deeds in Cape Girardeau County. §§ 429.-100, 429.110 RSMo. 1969. Malan, the owner of the realty, was a Michigan corporation with no registered agent in Cape Girardeau County, although it did have one in St. Louis. Section 429.110 RSMo. 1969, provides that when the owner of the property sought to be charged with a lien shall not be a resident of Missouri or shall have no agent in the county in which the property sought to be made subject to the lien is situate, the notice prescribed by § 429.100 RSMo. 1969, may be given constructively by filing it with the Recorder of Deeds for the county in which the property is situate. In view of Malan Construction Company's admission that it had no agent in the county wherein the real property was situate, Cape Girardeau County, notice pursuant to the provisions of § 429.110 RSMo. 1969 was lawful in this instance and respondents' liens do not fail for lack of notice as the appellant contends.

Whether Birk's statement of mechanic's lien was timely filed hinges on whether work performed by Birk on November 16, 1973, in relation to some broken "clean-outs," [2] was part of the original contract so that the filing of its mechanic's lien statement on March 15, 1974, complied with the requirement of § 429.080 RSMo. 1969, that the statement be filed within four (4) months of the date on which any indebtedness accrued.

Plaintiff's evidence on this issue was supported by the testimony of August W. Birk, the President of Birk's, Elbert Birk, its foreman, interrogatories of Malan to Birk and Birk's answers thereto, some of the stipulations, and Plaintiff's Exhibits 1 and 2, "Work Book" and "Time Sheets," respectively. The real bone of contention is

whether repair of some broken "clean-outs" on November 16, 1973, admittedly some months after what appellants claim was the completion of the contract, was chargeable to Crites' and Sailer's account.

The project out of which this litigation arose was the construction of a K–Mart building on property owned by Malan. Ross Construction Company was the general contractor on the project and Crites (as Crites and Sailer Construction Company shall hereinafter be identified) was a subcontractor to Ross (as Ross Construction Company shall hereinafter be identified). Birk, a general plumbing, heating and ventilating contractor, had, prior to this project, performed several jobs for Crites. Loy Crites, of Crites, phoned August Birk, Birk's president, during the summer of 1973 and told Birk that Crites had the K–Mart job and inquired whether Birk was interested in doing the piping work. Birk replied that the company would. Loy Crites told him that the sewer pipe had already been ordered and that Birk was to order anything else necessary for the job and to back-charge Crites for it. This agreement was not reduced to writing. It was agreed, however, that it would be a "cost-plus" contract. Birk would receive its "going hourly rate" for labor plus a reasonable price for cost of materials it furnished. Both firms had previously done business and this type of contract was not unusual in their prior dealings. Crites knew Birk's "hourly-rate" and also that Birk would treat Crites fairly on the costs of materials going into the job.

Birk entered upon performance of the agreement, installing the storm and sanitary sewers at the site, and Crites also asked it to install the water mains. Excavations were made, the necessary pipework laid, and the excavations then back-filled. When the work was done Birk also obtained several other contracts on the project, including some with Ross and some with Malan, although none of these were in connec-

---

**2.** "Clean-outs" were described in evidence as a piece of cast iron pipe running from the trunk sewer line to the surface of the ground provid-

ing surface access to the trunk sewer line so that it might be flushed out in case it becomes clogged and plugged up.

tion with Crites. Birk commenced work on the project on July 31, 1973, and had men on the job regularly until November 7, 1973. The sanitary sewers required "clean-outs" and a "clean-out" was installed every 100 feet of the sanitary sewer line. These "clean-outs" are designed to be "flush" with the finished surface. In some instances the "clean-outs" were installed protruding above the temporary surface and in others flush with that temporary surface. Where they were installed protruding from the surface it was because there was further grading to be done and after the grading black-top would be laid as the final surface and a plug would be put in the opening of each "clean-out". When those "clean-outs" which were left protruding had been completed the black-top still had not been laid. In all, about ten of these "clean-outs" were left protruding from the surface and each was marked with a red flag. Construction of the sanitary sewer "in the back" had been completed and accepted by the subcontractor and the owner a couple of weeks prior to November 16, 1973, when the foreman of the general contractor—Ross—called Mr. Birk and told him that they were ready to put down the blacktop but that some of the "clean-outs" were out of adjustment and needed attention. After receipt of this call, Mr. Birk inspected the site and observed that the protruding portions of some of the "clean-outs" were broken off and needed repair to adjust their height. Mr. Birk called his foreman and a laborer from another of his jobs and put them to work repairing the broken portions of the "clean-outs." These repairs took 12 feet of four-inch cast iron soil pipe, which is what the "risers" for the "clean-outs" were made of, put together with some 25 pounds of lead and 2 pounds of oakum. In the opinion of Elbert Birk, the foreman, this repair of the "clean-outs" was necessary for final completion of the job. In repairing these "clean-outs" two hours were spent by each of Birk's two employees on November 16, 1973, and the labor and material employed in this undertaking was entered on the time sheet of Birk, but the bookkeeper was told not to charge Crites for the labor; never-

theless Crites was charged by the bookkeeper. There was no evidence on the question of who was responsible for damaging these "clean-outs" between the time the work was completed and when the Ross foreman called Mr. Birk, but Mr. Birk sensed that Ross felt that it was Birk's responsibility to repair these "clean-outs." Both Mr. Birk and his foreman were certain that none of Birk's employees had broken the "clean-outs." Birk admitted that the repairs were done to promote harmony with Ross and Malan for whom Birk was performing several contracts, and that no consultation was had with Crites before repairs to the "clean-outs" were undertaken.

■ The trial court resolved this issue in favor of Birk, and we conclude that its holding should not be disturbed. The trial court found that Birk had established a running account with Crites which commenced on July 31, 1973, through November 16, 1973; that the repairs to the "clean-outs" were not, as Crites contended, pursuant to a separate contract. A "running account" is a mutual account between a buyer and seller to which charges and credits accrue or are entered as materials are sold or paid for. *J. R. Meade Co. v. Forward Construction Company*, 526 S.W.2d 21, 32[27, 28] (Mo.App.1975). A running account is deemed an entire contract, and, for the purpose of fixing the time for the filing of the statement of the account to perfect a mechanic's lien, each item of the account relates to the last item of labor performed and materials delivered. In the absence of any evidence to show a separate and distinct contract as to this last item, the account will be taken and considered as it appears to be, i.e. a running account arising under and by virtue of the contract out of which the contract originally grew. The mere lapse of time between the delivery of the items or the performance of the labor incorporated as items in a contract on a running account is insufficient to commence the running of the periods of limitation barring the lien, nor is it significant that the last item of work may be a small item. *J. R. Meade Co. v. Forward Construction*

*Company,* supra; *Trout's Investments, Inc. v. Davis,* 482 S.W.2d 510, 514[1, 2] (Mo.App. 1972).

■ We believe, as did the trial court, that perfecting the damaged "clean-outs" constituted a part of the original contract and was essential to make the "clean-outs" completed in a workmanlike manner as required by the terms of the oral contract. In the absence of this work and materials and the replacement of the protruding portions of the "clean-outs" the paving would not have been accomplished in accordance with the plans and specifications and the sewers would have ultimately plugged-up from dirt and gravel. That this work was of an emergency nature is evident from the testimony. In construction of this kind, it is our belief, no subcontract may be said to be completed until the work performed thereunder and the materials installed therein can become integrated into the whole of the completed project, and minor finishing touches such as those involved on November 16, 1963, are necessary to achieve that integration into the whole. It cannot be denied that this work was essential for the completion of the project, and was not performed for the mere purpose of preserving a mechanic's lien, but, rather, was reasonably within the purview of the original contract. *General Fire Extinguisher Co. v. Schwartz Bros. Commission Co.,* 165 Mo. 171, 65 S.W. 318, 323[8] (1901); *Badger Lumber Co. v. W. F. Lyons Ice & Power Co.,* 174 Mo.App. 414, 160 S.W. 49, 52[8] (1913). We rule this point against the appellants.

■ Appellants' final contention is that Southern intentionally omitted crediting Crites' account with substantial payments made and therefore the statement of account filed with Southern's lien notice was not a just and true account of the monies due it as required by § 429.080 RSMo. 1969. We find that this contention is without merit.

Appellants' argument in support of this contention revolves around a payment made to Southern by McCarthy Brothers Construction Company in settlement of Southern's claim against Crites for materials furnished on the construction of the St. Francis Hospital in Cape Girardeau, on which job McCarthy Brothers Construction Company was the general contractor. On May 14, 1974, McCarthy (as that company shall hereinafter be identified) paid to Southern the sum of $7,340.74 in settlement of its lien claim on the St. Francis Hospital project. It was not until May 31, 1974, that this sum was credited to the Crites' account on the St. Francis Hospital project. It was then ascertained that at that time there was then a balance due on the Crites' account for the St. Francis Hospital job, after a credit of $815.64 which Southern had agreed with McCarthy to give to the St. Francis Hospital job and a charge to which Crites was entitled for a hauling job for an affiliate company of Southern of $242.50, of only $2,077.45. Thus, Southern had in its possession $6,321.43 more than it was entitled to on the St. Francis Hospital job. Appellants therefore contended in the trial court, and here, that Southern was attempting to "double-charge" Crites this amount and therefore the account as stated at the time the notice of lien was filed was not a just and true account of the monies due.

Respondent Southern takes the position that at the time they filed their notice of lien in this case the statement of account was just and true, and that it was not a prerequisite to a valid lien that the payments be allocated between the accounts immediately upon receipt. It also relies on *Herrman v. Daffin,* 302 S.W.2d 313 (Mo. App.1957) for the proposition that the Missouri law is that undesignated payments may be applied at the choice of the creditor among the debtors accounts and that where the creditor does not make a designation as to how the allocation between the accounts shall be made, then the payment shall be applied to the oldest unsecured account.

The notice of lien was filed on February 22, 1974, by Southern. This lawsuit was instituted on June 4, 1974, and Southern was named defendant herein. On August 1, 1974, it filed its cross-claim seeking a judgment in an amount of $30,679.76

against Malan, Ross and Crites together with the impressing of a lien on the real estate owned by Malan. On August 30, 1974, Malan and Ross served Interrogatories on Southern. Interrogatory No. 10 inquired whether Southern had received any payment, either by cash or check, concerning the K–Mart building "and appurtenances" for materials furnished, and, if it did, to state the dates and the amounts of the payments as well as the person or corporation from whom the payment or payments were received. Answers to these Interrogatories were filed by Southern over Mr. Buhs' affidavit (Southern's General Manager of its Cape Girardeau facilities) on September 20, 1974, stating: "None with respect to the products furnished which form the subject of this suit."

Subsequently, on November 20, 1974, Southern filed "Amended Answers to Interrogatories" amending the Answer previously given to Interrogatory 10 as follows:

"ANSWER: Yes. On May 14, 1974, Southern Illinois Stone received payment of $7,340.74 from McCarthy Brothers to be applied on Crites & Sailer's account for the St. Francis Hospital job in furtherance of an agreement to give full credit for an additional $815.64 on that job, which credits were given on May 31, 1974. Southern Illinois Stone had previously applied payments made by Crites & Sailer to that St. Francis job account, however, whereby that job account had a balance of only $2,077.45 on its books. In addition, an affiliate company of Southern Illinois Stone owed Crites & Sailer $242.50 for hauling services and on June 8, 1974, Southern Illinois Stone gave credit to Crites & Sailer for that amount. At these times, the K–Mart job was the only unpaid account owing by Crites & Sailer to Southern Illinois Stone, and, therefore, Crites & Sailer should have become entitled to a total credit of $6,321.43 on this account. However, due to an accounting oversight and the handling of this account by its attorneys, such credit entitlement has been overlooked by Southern Illinois Stone until this time. Therefore, there remains due and owing on this

account the sum of $24,358.33 plus interest."

It is apparent that the filing of Southern's notice of lien occurred prior to the receipt of any payment from McCarthy of any monies in settlement of Southern's claim against Crites on the St. Francis Hospital job. Therefore, at the time the lien notice was filed the evidence does not refute that the statement of account as of that date for the K–Mart job was not a just and true statement of account as required by § 429.080 RSMo. 1969, as found by the trial court. Furthermore, once it was ascertained that there was an excess over and above the payment by McCarthy, credit of some $6,321.43 was given to Crites by Southern, that being the balance left over from the $7,340.74 paid by McCarthy. To this extent at least Crites got all of the credits it was entitled to, and cannot now be heard to complain.

■ As Southern argues, it is the settled law in Missouri that where one owes several debts to another and makes payment thereon, the creditor has the right to apply the payments, or any part thereof, as seems proper to the creditor, in the absence of any specific arrangement or designation that the payment shall be credited to either one of the several accounts on which there is a balance remaining unpaid. Upon failure of creditor to exercise his choice, the law will apply the credit on the debt which is older or is unsecured. *Scott v. Twin City State Bank*, 537 S.W.2d 641, 644[4] (Mo.App.1976); *Twellman v. Lindell Trust Company*, 534 S.W.2d 83, 95[22] (Mo.App.1976); *General Plywood Corp. v. S. R. Brunn Const. Co.*, 511 S.W.2d 905, 908[2] (Mo.App.1974). This Southern chose to do, as was its right.

■ A lien account is not vitiated by an unintentional failure to enter all of the credits to which the account is entitled, § 429.210 RSMo. 1969, nor will a lien fail due to a good faith inclusion of a charge which later is proved to have been excessive. *J. R. Meade Co. v. Forward Construction Company*, supra, 526 S.W.2d 32[3]. There is here no evidence that Southern

intentionally failed to credit Crites' account for any payments received prior or subsequent to the filing of its lien notice. We rule this point against the appellants.

The judgment is affirmed.

SIMEONE and GUNN, JJ., concur.