**SCHOOL DISTRICT OF UNIVERSITY CITY, ex rel. H & M MECHANICAL CORPORATION, Plaintiff/Appellant,**

v.

**RELIANCE INSURANCE COMPANY, Defendant/Respondent.**

No. 66420.

Missouri Court of Appeals, Eastern District, Division Four.

May 16, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 1995.

Application to Transfer Denied Sept. 19, 1995.

William H. Leyhe, St. Louis, for appellant.

Bernard A. Reinert, James A. Bingley, St. Louis, for respondent.

GRIMM, Chief Judge.

Plaintiff sought a judgment against defendant insurance company on a labor and material payment bond. Defendant filed a summary judgment motion, alleging that plaintiff failed to give timely notice of its claim. The trial court granted the motion and plaintiff appeals. We reverse and remand.

Plaintiff raises two points. The first is dispositive. The trial court erred in granting summary judgment because it could not determine on the record before it that defendant was entitled to judgment as a matter of law.

## I. Background

In June, 1988, school district contracted with general contractor for construction of improvements to a school building. The general contractor subcontracted part of its obligation to Associated Engineering, who in turn subcontracted out the sheetmetal work to plaintiff. The amount of the sheetmetal subcontract was $73,300.

Defendant issued a labor and material payment bond on behalf of the general contractor. Among its provisions, the bond provided that general contractor and defendant agreed with school district

that every claimant as herein defined who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond. . . .

However, suit could not be commenced unless written notice was given to two of the three parties involved, i.e. school district, general contractor, and defendant. The bond required the written notice "within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials, for which said claim is made."

Plaintiff began work and sent its first invoice to Associated on August 16, 1988. Plaintiff sent its last invoices on January 20, 1989. In addition to the contract price of $73,300, the parties agreed to extras totaling $3,540.73. Thus, the total amount due was $76,840.73.

Associated made three payments in September, November, and December, 1988 totaling $46,179. Associated failed to pay the balance of $30,661.73.

Plaintiff filed its petition on November 7, 1990. In paragraph 8 of the petition, plaintiff alleged "said sum has been due since December 30, 1988." Further, plaintiff alleged that "demand for payment was made on [defendant] on March 6, 1990."

In February, 1991, interrogatories were submitted to plaintiff. Among other things, plaintiff was asked the dates it furnished labor, material, or equipment for this project.

Plaintiff submitted its response in May, 1991. The answers referred to attached weekly time sheets and previously furnished invoices. Those records reflected that plaintiff's last invoices were dated January 20, 1989. These records showed a balance due of $30,661.73.

Also, the interrogatories asked plaintiff when it made its demand on defendant. Plaintiff answered: "See copy of letter." Attached was a November 30, 1989 letter from plaintiff to defendant. Among other things, the letter said:

[Plaintiff] furnished labor and material pursuant to its contract with Associated for which [plaintiff] has not been paid. The value of the labor and material furnished by [plaintiff] in the performance of the contract through January 4, 1989, is $76,840.73. Associated has paid [plaintiff] the aggregate sum of $46,179.00, leaving due, owing and payable a balance of $30,-661.73 plus lawful interest.

In April, 1992, defendant filed a motion for summary judgment. The motion contended that defendant had failed to give timely notice as required by the bond. In June, 1992, plaintiff filed (1) an amended response to request for production, (2) a supplemental answer to interrogatories, and (3) an affidavit in opposition to summary judgment. The affidavit stated that (1) the contract required it to furnish and install exhaust fans, (2) fan guard covers are a necessary component of exhaust fans, (3) "on or before September 19, 1989, it was learned that the fan guard cover had not been installed on the exhaust fan previously installed by [plaintiff] in the attic of the school," (4) on September 19, 1989, an employee installed the fan cover, and (5) plaintiff performed the last contract work on September 19, 1989. As previously stated, the trial court granted summary judgment.

## II. Improper Notice

■ Plaintiff contends the trial court erred in sustaining the motion for summary judgment because it gave notice as required by the bond within 90 days after it performed the last of the work or furnished the last of the materials for which the claim was

made. Stated another way, the issue is whether the delivery and installation of the attic exhaust fan cover nine months after all other work was completed and billed is sufficient to extend the time to give notice under the bond.

■ Our standard of review requires us to give the non-movant the benefit of all reasonable inferences from the record. *ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo*. *Id.*

Defendant contends that the trial court's judgment is supported by *Reorganized Sch. Dist. R–3, Potosi v. L.D. Compton Constr. Co.*, 483 S.W.2d 674 (Mo.App.E.D.1972). In that case, the labor and material payment bond contained a 90 day notice provision similar to the one before us.

In *Compton*, the plumbing work was substantially completed on September 29, 1965. A problem with a water heater became apparent after October 5, 1965. On December 29, 1965, the plumbing contractor sent a man to the school. At that time, a shorter piece of gas pipe was substituted for a four-to-five inch pipe originally installed. No charge was made. *Id.* at 675–76.

The *Compton* court held that "any replacement or repair when a discrepancy is found in material or equipment" is insufficient. If such were not the holding, "the original contractor and his surety might be held under the bond for defaulting subcontractor's obligations to their materialmen at any time work is done and materials replaced under a warranty." *Id.* at 677. The *Compton* court reversed and set aside the judgment against the original contractor and surety. *Id.*

Unlike *Compton*, the facts before us do not involve a replacement or repair. Rather, here we have the installation of an exhaust fan cover which, according to plaintiff's affidavit, was required by the contract to be furnished and installed. *Compton* is not decisive.

Plaintiff's contract was virtually completed by January, 1989. Its own evidence reflects that everything was done by that time, with the possible exception of the exhaust fan cover. However, plaintiff's belated disclosure of the installation of the exhaust fan cover creates a dispute as to a genuine issue of fact. The disputed fact, for purposes of the labor and material bond, is the date on which the last "work or labor was done or performed, or materials were furnished" by plaintiff.

We do not believe the quoted clause can be construed literally. If such were the case, the failure to install an electrical face plate in a remote location could prevent the running of time for giving notice indefinitely. Such a construction would be unfair to the general contractor and its surety, for its obligations would not end until the plate was installed, possibly years later.

Rather, it appears that courts have placed some reasonable limitations on similar language in mechanic's lien cases. In *Compton*, this court recognized that a labor and material payment bond is designed to afford the same protection in the public construction arena as the mechanic's lien law gives the private sector. *Id.* at 676. From those cases, we glean the following.

■ Where the reason for the furnishing of small additional items is only to circumvent the notice provision, the time for filing will not be extended. *See Harrison v. Stouffer*, 193 Md. 46, 65 A.2d 895 (1949). However, furnishing labor or material necessary for the proper performance of the contract done in good faith at the general contractor's or owner's request does extend the time. *See Channing v. Brindley–Sullivan, Inc.*, 855 S.W.2d 463 (Mo.App.E.D.1993); *A.E. Birk & Son Plumb. & Heat., Inc. v. Malan Const.*, 548 S.W.2d 611, 615–16 (Mo. App.E.D.1977); *District Hgts. Apts. v. Noland Co.*, 202 Md. 43, 95 A.2d 90 (1953).

■ Further, when the labor or material furnished is for the purpose of fully completing the contract and not merely a gratuity or act of friendly accommodation, the notice time is extended. *Id.* However, cases applying this rule involve substantial labor or material. *Noland*, a 1953 case, involved materials valued at $1,000 and $1,200. In *Mt. Airy Plumb. & Heat. Inc. v. Grey Dawn Dev. Co.*, 237 Md. 38, 205 A.2d 299, 301 (1964), the contractor finished the job by installing 50

square feet of ceramic tile, bathroom fixtures, and bringing water into the house by laying pipe.

Another factor was recognized in *Benner–Williams, Inc. v. Romine,* 200 Kan. 483, 437 P.2d 312 (1968). There, contractor installed carpeting, cabinets, and several other items in November and December, 1964. However, an end splash for the cabinet top was not installed until March 12, 1965. In upholding the lien, the court noted that the end splash was necessary to complete the job. Most important was the "unrefuted" fact "that the delay in installation arose because of the lack of material, rather than any bad faith." *Id.* 437 P.2d at 316.

Finally, we note an old southern district case, *Floreth v. McReynolds,* 224 S.W. 995 (Mo.App.S.D.1920). In that case, almost all work was done in 1916 and 1917. In the fall of 1918, contractor connected a drainpipe. The court observed that "connecting the drainpipe was a purely incidental and trivial job." In denying the lien, it commented that "a trivial charge" should not uphold a lien. *Id.* at 998.

We now apply the teaching of these cases to the facts before us. From plaintiff's affidavit, it appears that the exhaust fan guard cover was required by the initial contract. Thus, the cover might be required for proper performance of that contract. However, the affidavits are silent as to (1) plaintiff's good faith, (2) whether the work was done at the request of the school district or the general contractor, (3) the value of the cover and the labor performed, (4) whether the cover was unavailable when the other work was accomplished, and (5) the reason for the nine month delay in installing the cover. By setting forth relevant facts like these, the trial court could determine whether plaintiff's notice was timely and whether defendant is "entitled to a judgment as a matter of law." Rule 74.04(c)(3). In their absence, the trial court could not make such a determination. Point granted.

### III. Reasonable Notice

For its second point, plaintiff alleges the trial court "erred in finding that the ninety day notice required by the labor and material

payment bond was reasonable and did not thwart the purpose and intent of Section 107.170." *

In *Compton,* this court recognized that the 90 day notice provision was "valid and enforceable." *Compton,* 483 S.W.2d at 676. However, since *Compton,* the mechanic's lien law has changed, giving a subcontractor six months instead of four months to file its lien. As a result, plaintiff contends that the 90 day notice is no longer reasonable.

Plaintiff acknowledges that after this change, our southern district colleagues found the 90 day notice valid. *Frank Powell Lumber Co. v. Federal. Ins. Co.,* 817 S.W.2d 648 (Mo.App.S.D.1991). We need not reach that issue today. If the September 19, 1989 date is not controlling, plaintiff's claim would fail under a six-month period. Nothing in the record reflects that plaintiff gave written notice within six months of the work or material furnished in December, 1988 or January, 1989. Point denied.

The trial court's judgment is reversed and the cause remanded for further proceedings.

AHRENS, P.J., and KAROHL, J., concur.

---

* All statutory references are to RSMo 1986.