MANNING CONSTRUCTION
COMPANY, INC.,
Appellant,

v.

MCI PARTNERS, LLC.,
et al., Respondents.

No. WD 75284.

Missouri Court of Appeals,
Western District.

Nov. 5, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied Dec.
24, 2013.

Application for Transfer Denied
Feb. 25, 2014.

Danne W. Webb and Amy J. Tillery, Kansas City, MO, for appellant.

Christopher M. Chugh, Kansas City, MO; Bradley R. Gardner, Lenexa, KS; Carol F. Walsh; Douglas D. Silvius and Matthew P. Clune, Kansas City, MO, for respondent.

Before Division One: MARK D. PFEIFFER, P.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant Manning Construction Company filed this suit in the Circuit Court of Platte County, seeking to foreclose on a mechanic's lien arising out of construction work it performed on an office condominium project in Kansas City. Following a bench trial, the circuit court denied relief, based on its determination that Manning's mechanic's lien filing was untimely. Manning appeals. We affirm.

## Factual Background

The proceedings in the trial court involved numerous parties and claims. On appeal, however, Manning challenges only the trial court's rejection of its claim seeking to foreclose on its mechanic's lien. We summarize only the evidence necessary to our disposition of the issues Manning raises.

Respondent MCI Partners, LLC was the owner of the Ambassador Drive Office Condominiums Project in Kansas City (the "Project"). MCI contracted with Watkins & Co. to serve as the broker and developer of the Project. An affiliate of Watkins & Co., Watkins Development Services, LLC ("Watkins"), contracted with Manning to construct three buildings on the Project, in two phases, on a cost-plus basis. Manning ultimately only built one building (Building #2) before the Project was halted due to MCI's inability to obtain additional financing. A certificate of substantial completion for Building #2 was executed by Watkins, Manning and the Project's architect

in August 2007. The testimony at trial indicated that Manning completed performance of "punch-list" items on Building # 2 in October 2007.

Manning submitted twelve pay applications for its construction work between January 25, 2007, and April 14, 2008. Manning received full payment on the first nine pay applications, but received only partial payment on applications ten, eleven, and twelve. Manning contends that the total value of its work (including its 3.5% fee) was in excess of $3.3 million, but that it was only paid slightly more than $3.1 million.

Tom Manning met with a representative of Watkins, Tim Ealey, in December 2008 to express his concerns regarding Manning's unpaid invoices. Tom Manning told Ealey that Manning's time to file a mechanic's lien to protect its interests was running short. Ealey requested that Manning not file a mechanic's lien, because doing so would interfere with Watkins' efforts to sell condominium units in the Project, and to obtain financing for further construction. Rather than immediately filing a mechanic's lien, Ealey and Tom Manning instead agreed that Watkins would hire Manning to perform mowing and weed-trimming work on the Project, at a cost of $1,400, to extend Manning's lien rights. Change of Work Order # 10, reflecting this landscaping work, was issued by Manning and approved by Watkins on December 17, 2008.

Ealey and Tom Manning had a similar conversation in June 2009, when Manning again indicated that it was facing a deadline to file a mechanic's lien for its unpaid work. Ealey and Tom Manning agreed to Change of Work Order # 11, which authorized Manning to perform landscaping and silt-fence repair at a cost of $1,490, to further extend Manning's lien-filing deadline.

Manning filed its mechanic's lien on November 19, 2009. Manning's lien filing claimed that $195,800.45 remained unpaid for its work on the Project. The lien filing attached Manning's twelve pay applications; it did not specifically refer to the work Manning performed under Change of Work Orders ## 10 and 11 in December 2008 and June 2009. The lien filing nevertheless claimed that "Manning last furnished labor, materials and services to the Project on June 1, 2009."

Manning thereafter filed this suit in the Circuit Court of Platte County. Among other things, Manning's Petition prayed that the court order foreclosure on its mechanic's lien to enforce its right to payment for its unpaid fees.

The circuit court conducted a two-day bench trial on Manning's claims. Following trial, the circuit court entered its Findings of Fact, Conclusions of Law and Judgment, which denied Manning's request to foreclose on its lien. The circuit court held that Manning's November 2009 lien filing was untimely because it did not comply with the six-month limitations period found in § 429.080, RSMo. The court rejected Manning's claim that the work it performed under Change of Work Orders ## 10 and 11 extended the six-month lien-filing period. The Judgment explained:

Manning signed a certificate of substantial completion on August 6, 2007 for the work contemplated under the notice to proceed. Testimony at trial indicated that by October of 2007 all of the punch list items had been completed. The last pay application contained in the mechanic's lien detailing any work on the project is pay application no. 12. The detail page for pay application no. 12 indicates that it was for a period ending March 27, 2008. The only other evidence of any work by Manning at the project after pay application no. 12 was con-

tained in two change orders that were not included in the mechanic's lien. The first change order showed mowing and weed eating in mid-December of 2008. The second change order was for mowing, weed eating and maybe silt fence repair in June of 2009. Manning's testimony was clear that this work was done solely for the purpose of attempting to extend the mechanic's lien filing deadlines, by Mr. Manning's calculation, for about 22 to 23 months after substantial completion of the work called for in the notice to proceed provided by Watkins prior to January 2007.

. . . .

The first change order work that Manning relies on to extend its lien rights was performed eight and a half months after the last date of work reflected in the filed mechanic's lien and fifteen and a half months after the certificate of substantial completion was signed. This was after the lien rights had expired. The second change order was five and a half months later. None of this work was directly related to or improved the building on which Manning seeks to establish its lien. If this court were to establish a lien under these facts lien rights could be extended indefinitely against unsuspecting owners or lenders. . . . The failure to file the lien within six months of substantial completion bars a mechanic's lien from being imposed on the completed structure.

The Judgment also finds that the change-order work could not extend Manning's lien-filing deadline because the work was non-lienable, for the reason that it "did not result in any permanent benefit to the land."

Manning appeals.

### Standard of Review

■ "Because this is a court-tried case, our review is under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (1976)." *Urban Renewal of K.C. v. Bank of N.Y.*, 289 S.W.3d 631, 634 (Mo.App.W.D. 2009). "We will affirm unless the decision is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Id.*

### Analysis

■ Although Manning challenges several of the trial court's legal conclusions, this appeal can be resolved by addressing only one of the trial court's holdings: that the change-order work was ineffective to extend Manning's lien rights because the change orders were executed solely to extend Manning's lien rights after it had completed the work contemplated under the notice to proceed, and after its lien rights related to that work had expired.

Mechanic's liens are a creature of statute. Section 429.010, RSMo provides:

Any person who shall do or perform any work or labor upon land, . . . or furnish any material . . . for any building, erection or improvements upon land, . . . under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, trustee, contractor or subcontractor, . . . upon complying with section 429.010 to 429.340, shall have for his or her work or labor done . . . or materials . . . a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated . . . .

■ Under § 429.080, RSMo, a mechanic's lien claimant must file "a just and true account of the demand due" with the clerk of the circuit court for the relevant county "within six months after the indebtedness shall have accrued." The indebtedness is deemed to "accrue[ ]" " 'when the last labor is performed or the last material

is furnished under an agreement.'" *United Petroleum Serv. Inc. v. Piatchek*, 218 S.W.3d 477, 482 (Mo.App.E.D.2007) (quoting *Shamrock Bldg. Supply v. St. Louis Inv.*, 842 S.W.2d 556, 558 (Mo.App.E.D. 1992)); *see also, e.g., Midwest Floor Inc. v. Miceli Dev. Co.*, 304 S.W.3d 243, 247 (Mo. App.E.D.2009). "When a job is finished and indebtedness has accrued is a question of fact." *Midwest Floor*, 304 S.W.3d at 247 (citing *Channing v. Brindley–Sullivan, Inc.*, 855 S.W.2d 463, 465 (Mo.App. E.D.1993)).

■ "Materials furnished under distinct contracts cannot be mingled in one account and a lien obtained for the aggregate amount." *Id.* at 248; *see also In re Trilogy Dev. Co. (Trilogy Dev. Co. v. BB Syndication Servs., Inc.)*, 468 B.R. 854, 889 (Bankr.W.D.Mo.2011). Once again, the question whether work was performed under a single contract, or instead under separate contracts, is a question of fact; the resolution of this issue "depends largely upon the intention of the parties." *Trilogy Dev.*, 468 B.R. at 889, 890; *see also, e.g., Schwartz Materials Co. v. West End Realty & Constr. Co.*, 154 S.W.2d 366, 368–69 (Mo.App.1941).

■ An additional legal principle is critical here: a contractor and a property owner cannot extend § 429.080's six-month filing deadline by agreement. As the Missouri Supreme Court explained in *George F. Robertson Plastering Co. v. Altman*, 430 S.W.2d 169 (Mo.1968),

The effect of [§§ 429.010, 429.080, and 429.180] is to limit the duration of the opportunity to secure the lien. If the plaintiff does not comply with the time requirements of filing the lien, the lien is lost. The requirement of filing the lien on time is not something which defendant can enlarge.... [¶] ... A mechanic's lien is a creature of statute, and not of contract.

The very purpose of a waiver is to prevent a forfeiture of a right. But a right which does not exist is not created by a waiver. If plaintiffs failed to file such a statement as is required by statute giving them a right of action, their right never existed and cannot be brought into being by a waiver.

Until the filing of the account in the clerk's office, the lien of the mechanic is a secret lien. In the present case there was a period of five years during which no mechanic's lien had been filed. To hold that the lien can after this length of time be filed and then prosecuted to final judgment, because the owners waived the time for filing the lien, would be to ignore the plain terms of the statute as to what is necessary to establish the lien and would invite confusion and litigation.

*Id.* at 172–73 (citations and internal quotation marks omitted); *see also Gen. Fire Extinguisher Co. v. Schwartz Bros. Comm'n Co.*, 165 Mo. 171, 65 S.W. 318, 323 (1901).

■ Consistent with the principle that a property owner and contractor cannot agree to extend § 429.080's filing deadline, a contractor cannot perform additional work simply to extend or revive a mechanic's lien. For example, in *Floreth v. McReynolds*, 205 Mo.App. 143, 224 S.W. 995 (1920), a contractor performed plumbing work on a home (at a cost in excess of $1,200). One year and four months after the bulk of the plumbing work was performed, the contractor returned to the property and connected a drainpipe, for which it charged $.90 for a single hour of labor (during which time the contractor also performed other, non-lienable work). The court held that the connection of the drainpipe did not extend the lien-filing period: "It seems to us clear that this con-

necting the drainpipe was a purely incidental and trivial job—*a mere makeshift on which to hang an otherwise barred lien.*" *Id.* at 998 (emphasis added). Numerous additional cases recognize that work which is performed solely for the purpose of extending a contractor's lien rights is ineffective to toll the limitations period.[1]

We acknowledge that these cases generally contemplate work performed unilaterally by the contractor; some of these cases state that, if later work was requested by the property owner, the work *can* extend a lien-filing deadline. However, the principle that later work cannot be employed solely as a device to extend the lien-filing period must be read consistently with the rule that a property owner and contractor cannot *agree* to extend the filing period. Combining these two principles, the conclusion is inescapable that, whether or not the owner requests or agrees to it, later work which is identified, agreed to, and performed solely as a means of extending a lien-filing deadline is ineffective to toll the lien-filing period specified in § 429.080.

The evidence in this case supports the trial court's conclusion that Manning performed the work authorized by Change of Work Orders ## 10 and 11 after it had completed the performance of the work for which it asserts a mechanic's lien, and after its lien rights for that work had expired. The evidence also support the court's finding that the change-order work was the subject of a new and separate agreement between Manning and Watkins, which was motivated solely by Watkins' desire to delay Manning's filing of a lien.

Thus, as the trial court found, Watkins, Manning and the Project architect certified the substantial completion of Building # 2 in August 2007, and Manning completed its work on punch-list items related to Building # 2 in October 2007. The last pay application included in Manning's mechanic's lien filing is dated April 14, 2008, and relates to the period ending March 27, 2008. Using any of these dates, Manning's lien rights expired well before Tim Ealey and Tom Manning first agreed to Man-

---

1. *See, e.g., United Petroleum,* 218 S.W.3d at 482 ("work performed by a subcontractor *that is not intended to simply extend the mechanic's lien account filing time* but is necessary to complete the project in a workmanlike manner operates to extend the lien deadline if it is reasonably within the purview of the original contract" (emphasis added)); *A.E. Birk & Son Plumbing & Heating, Inc. v. Malan Constr. Co.,* 548 S.W.2d 611, 616 (Mo.App.1977) (finding that later work extended lien-filing deadline where "[i]t cannot be denied that this work was essential for the completion of the project, and was not performed for the mere purpose of preserving a mechanic's lien, but, rather, was reasonably within the purview of the original contract"); *Brown v. Davis,* 249 S.W. 696, 697–98 (Mo.App.1923) ("It could not be said as a matter of law that the plaintiff performed the [later] work … merely for the purpose of extending the time for filing his lien …"); *Badger Lumber Co. v. W.F. Lyons Ice & Power Co.,* 174 Mo.App. 414, 160 S.W. 49, 53 (1913) (affirming trial court's holding that later supply of materials to con-struction project extended deadline for lien filing as to earlier-supplied materials, where "the court, in its findings of fact, states that these items were not charged to the account by appellant for the purpose of extending the time for filing its lien, but were sold in good faith for the purpose of being used, and the same were used, in the construction of the building in question"); *Gen. Fire Extinguisher,* 65 S.W. at 323 (noting evidence that "the [later] work done by the plaintiff … was not a mere scheme on its part to extend the period for filing the lien," and that owner's knowledge of, and acquiescence in, later work was "not [intended] as making a new contract for extending the period of limitations"); *see also School Dist. of Univ. City ex rel. H & M Mech. Corp. v. Reliance Ins. Co.,* 904 S.W.2d 253, 256 (Mo.App.E.D.1995) (applying mechanic's-lien principles to suit on construction performance bond; "Where the reason for the furnishing of small additional items is only to circumvent the notice provision, the time for filing will not be extended.").

ning's performance of the change-order work in December 2008.

The evidence also indicates that Manning and Watkins only discussed, and agreed to, the change-order work after Manning informed Watkins that it was facing time pressure to file a mechanic's lien for the amounts it had not been paid, and that the purpose of hiring Manning to perform this work was solely to extend Manning's lien rights. In his testimony Tom Manning was explicit and candid on this point:

Q. Did you have any discussions with anybody about filing a lien on this project?

A. Yes, we did.

Q. And who did you have discussions with?

A. I had discussions with Tim Ealey about filing a lien on the property.

Q. All right, and what were those discussions?

. . . .

A. We expressed concerns that we were running out of time to file mechanic's liens without performing any additional work. Tim Ealey did not want us to file a mechanic's lien on the property for the reason that it would hurt their chances of selling condo units if a lien was attached to the property.

Q. So as a result of those conversations did you have discussions about doing some additional contract work?

A. Yes, we did.

Q. And did you, in fact, do additional work?

A. Yes, we did.

Q. And what work did you do?

A. Miscellaneous work. We did some clearing of some grounds. We did some clearing of grass, debris, junk, cleaning up the site. One time we mowed the entire 12 acres because it was getting gnarly and they were having problems with the authorities. Whatever Time Ealey directed us to do.

Tom Manning's testimony makes clear that the performance of this additional work was agreed to because (Tom Manning and Ealey believed) it would have the effect of extending Manning's lien-filing deadline.

Q. So you and Mr. Ealey came up with a plan on how to address this issue?

. . . .

A. I don't know how you're wording that but on his request we did work on the project to extend the mechanic's lien rights per Tim Ealey's request.

Q. Was it Mr. Ealey that came up with this idea of extending the lien rights by doing more work or was it you that suggested that?

A. We simply told him that we were running out of lien rights and if we didn't do any more work on the project then our lien rights would expire and we had to file a mechanic's lien before the lien rights expire.

Q. So then did Mr. Ealey respond to you that, hey, I'd like you to do some more work on the project to extend your lien rights. Would you accept that?

A. Yes, pretty much.

Q. And your response was yes, we would accept that?

A. Yes.

Q. And so Mr. Ealey went to find something for you to do?

A. Yes.

. . . .

Q. ... [A]nd then six months later you have another conversation with Mr. Ealey that's in the same vein. We are running out of time to file a mechanic's lien, what are we going to do, right?

A. That's correct.

Q. And Mr. Ealey suggested, is it true that Mr. Ealey suggested the same course of action, I will find something for you to do?

A. That's correct.

Similarly, a letter sent by a Manning employee to Watkins, enclosing Change of Work Order #11 for execution, makes clear that the purpose of the Change of Work Order was to extend Manning's lien-filing deadline.

It is my understanding that you will fax this back immediately so as to extend our lien rights for the work that has been performed under the existing Contract that has not been invoiced or funded. Accordingly, we understand it is not necessary for us to file a lien at this time because our last day of physical labor was performed on June 1st, 2009.

The fact that this work was commissioned only on six-month intervals, and that Manning performed no lienable work for several months prior to the first change order, or between the two change orders, also supports the finding that the work was commissioned only to extend § 429.080's lien-filing deadline.

Substantial evidence supports the trial court's conclusion that the work for which Manning now asserts a lien was concluded *before* the change orders were approved, and that the change orders were not intended as a continuation of the work previously performed. Instead of continuing the work Manning had previously contracted to perform, the evidence indicates that Ealey identified the change-order work solely as a mechanism to forestall Manning's lien filing, and that Ealey would not have requested that Manning perform this work except for its potential lien filing. The evidence provides strong support for the proposition that the change-order work was "a mere makeshift on which to hang an otherwise barred lien." *Floreth*, 224 S.W. at 998. Accepting Manning's argument would permit a contractor and property owner to extend the lien-filing deadline indefinitely, so long as the contractor performed some *de minimis* work on six-month intervals. This result is foreclosed by the Supreme Court's decision in *George F. Robertson Plastering*, 430 S.W.2d at 172–73.

■■■■ We recognize that work may be considered to have been performed under a single contract even though the work is interrupted or sporadic; the simple lapse of time between bouts of work does not necessarily prevent a court from finding the work to be contractually related.[2] We also recognize that later work may be sufficient to extend the lien-filing deadline for earlier work, even though the later work may not be substantial in comparison to the work that preceded it.[3] Here, how-

---

2. *See, e.g., Channing*, 855 S.W.2d at 465 ("[t]he mere lapse of time between the rendering of services as items in a contract on a running account is insufficient to commence the running of the statute of limitations barring the lien"); *A.E. Birk*, 548 S.W.2d at 615; *J.R. Meade Co. v. Forward Constr. Co.*, 526 S.W.2d 21, 31 (Mo.App.1975); *Trout's Invs.,*

*Inc. v. Davis*, 482 S.W.2d 510, 514 (Mo.App. 1972).

3. *See, e.g., United Petroleum*, 218 S.W.3d at 482 ("when additional labor is requested to be done, even if the work is minor, the indebtedness does not become complete until that labor is performed"); *Channing*, 855 S.W.2d at 465; *S & R Builders & Suppliers, Inc. v.*

ever, the trial court did not rely merely on the time gap between Manning's work ending in March 2008, and the change-order work in December 2008 and June 2009; nor did the court rely exclusively on the *extent* of the change-order work, which cost a total of only $2,890 (or less than .1% of Manning's total billings). Instead, the circuit court properly relied on the extensive evidence that the work Manning performed in December 2008 and June 2009 was an afterthought which was only suggested after Manning raised the prospect of filing a mechanic's lien, and that Tom Manning and Tim Ealey agreed to the work solely as a means of extending Manning's lien-filing deadline, to permit Ealey more time to market condominium units and attempt to obtain further financing.

In light of the trial court's findings of fact, which are fully supported in the record, the court did not err in concluding that the change-order work did not extend Manning's lien rights, and that Manning's November 2009 mechanic's lien filing was accordingly untimely.

## Conclusion

The circuit court's judgment is affirmed.

All concur.

---

*Marler,* 610 S.W.2d 690, 695 (Mo.App.E.D. 1980) ("the last item installed or the last amount of labor expended may be small com-

pared to the entire construction project and yet be lienable"); *Trout's Invs.,* 482 S.W.2d at 514.