**URBAN RENEWAL OF K.C., Respondent,**

v.

**BANK OF NEW YORK, Appellant.**

No. WD 69665.

Missouri Court of Appeals, Western District.

April 21, 2009.

Application for Transfer to Supreme Court Denied June 2, 2009.

Application for Transfer Denied Sept. 1, 2009.

Scott D. Mosier, Chesterfield, MO, for Appellant.

Jeremiah Kidwell, Kansas City, MO, for Respondent.

Jason C. Conkright, Kansas City, MO, Co–Counsel for Respondent.

Before: ALOK AHUJA, P.J., HAROLD L. LOWENSTEIN, J., and THOMAS H. NEWTON, C.J.

THOMAS H. NEWTON, Chief Judge.

The Bank of New York (N.Y.) appeals the trial court's judgment compensating Urban Renewal of K.C. (Urban) for rehabilitating its property. Urban obtained temporary possession of the property through a court order. NY sought the restoration of the possession of its property, and Urban sought ownership of NY's property. The trial court restored the property to N.Y. on the condition that it reimburses Urban for its rehabilitation expenses. We affirm in part, reverse in part, and remand.

**Factual and Procedural Background**

On December 11, 2006, Urban petitioned the trial court for temporary possession of a foreclosed home to rehabilitate it, as provided in sections 447.620–447.640.[1] Urban listed the individual owner of the property and Equicredit Corporation (Equicredit) as the defendants to the action. On April 5, 2007, Equicredit filed a motion to dismiss the petition for failure to state a claim upon which relief may be granted. Equicredit sought dismissal because neither it nor the individual owner held interest in the property after the property was sold at foreclosure sale on November 30, 2006. It argued that the current owner, NY[2], was not a party to the action, N.Y.

---

1. Statutory references are to RSMo 2000 and the Cumulative Supplement 2008.

2. The official title that Equicredit provides is The Bank of New York as Trustee for the

was "prepared to take necessary action regarding the [p]roperty, and [Urban] failed to meet the applicable statutory requirements under Chapter 447." The trial court denied Equicredit's motion to dismiss on May 17, 2007.

On July 6, 2007, Urban requested a hearing on its petition pursuant to section 447.630 and asked to enter the property so that it could develop a rehabilitation plan. The trial court granted leave for Urban to inspect the property and scheduled a hearing on Urban's rehabilitation plan for August 2, 2007. At the hearing, Urban presented evidence concerning the allegations set forth in its petition for temporary possession to rehabilitate and presented its rehabilitation plan. Equicredit presented evidence challenging the allegations in the petition and presented its own rehabilitation plan. After the hearing, the trial court granted Urban's petition for temporary possession and approved its rehabilitation plan. It found that the mandatory requirements of section 447.622 existed at the time the petition was filed and that Urban had adequate resources to rehabilitate and thereafter manage the property. It also found that Equicredit had "failed to demonstrate that [Urban] should not be allowed to rehabilitate the property."

On October 31, 2007, NY, as Equicredit's successor in interest, petitioned the court for restoration of property under section 447.638.[3] NY alleged that it should obtain possession because it was the current owner, had submitted its own plan of rehabilitation, and would pay Urban the compensation determined by the court for Urban's expenditures. Pursuant to section 447.636, Urban filed its first quarterly report of the rehabilitation on December 4, 2007. On March 4, 2008, Urban sought to become owner of the property through a motion for sheriff's deed under section 447.625. Urban filed its second and final quarterly report on March 7, 2008.

On March 21, 2008, the trial court held a hearing on both motions. Urban presented evidence of its expenditures. During cross-examination of Urban's witness, N.Y. offered Urban's articles of incorporation, which listed Urban's purpose as "neighborhood preservation." At the close of Urban's case, N.Y. moved for a directed verdict in its favor on Urban's motion for sheriff's deed. NY asked the trial court to dismiss "the claims filed by plaintiff for Sheriff's deed and [ ] their petition for deed and possession of the property pursuant to section 447.620 *et seq.*" because Urban admitted that it had not completed rehabilitation and Urban failed to state a claim. NY argued that Urban failed to state a claim because Urban was not an organization within the act and because the property was not unoccupied by N.Y. for at least six months prior to filing the original petition. The trial court denied the motion. NY then presented evidence that Urban Renewal's receipts did not match the amount requested, $114,000 was too expensive for the rehabilitation, and a reasonable price for the rehabilitation including a contractor's fee was in the range of $85,000 to $95,000. NY renewed its motion for directed verdict. Urban called its witness for rebuttal evidence, and N.Y. renewed its motion again. At that point, the trial court took NY's motion with the case.

On April 17, 2008, the trial court granted NY's petition, restoring the property to N.Y. with the condition that N.Y. reimburses Urban for its reasonable expenditures of $114.439.52. It denied Urban's

---

holders of the EQCC Asset Backed Certificates Series 2001–2.

3. Equicredit had previously filed a premature restoration motion on June 22, 2007.

motion for sheriff's deed. It found that Urban was a proper organization under the statute and that the petition and the evidence met the statutory requirements, including the property being continuously unoccupied for six months by any person legally entitled to possession. NY appeals, raising three points.

## Standard of Review

Because this is a court-tried case, our review is under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (1976). *Mo. Land Dev. Specialties, LLC v. Concord Excavating Co.*, 269 S.W.3d 489, 496 (Mo.App. E.D.2008). We will affirm unless the decision is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.*

## Legal Analysis

In its first and second points, N.Y. argues that the trial court erred as a matter of law by not dismissing Urban's action and not granting a directed verdict in NY's favor because Urban failed to state a claim upon which relief may be granted. Specifically, N.Y. claims that Urban failed to meet the statutory requirements in section 447.622 because the property was not continuously unoccupied for six months by persons legally entitled to possession and that Urban was not an organization as defined in section 447.620.

■ Section 447.622 allows any organization, as defined in section 447.620(5), to petition the court to have property declared abandoned pursuant to sections 447.620 and 447.640 and to gain temporary possession of the property if certain statutory requirements are met at the time of the petition's filing. § 447.632. Those requirements include: "(1) The property has been continuously unoccupied by persons legally entitled to possession for at least

six months prior to the filing of the petition; (2) The taxes are delinquent on the property; (3) The property is a nuisance; and (4) The organization intends to rehabilitate the property." § 447.622. After a hearing under section 447.630, the trial court shall grant the petition if (1) the statutory conditions of section 447.622, as alleged in the petition, existed at the time the verified petition was filed, (2) the organization's rehabilitation plan is feasible, and (3) the owner has failed to demonstrate that the organization should not be allowed to rehabilitate. § 447.632.

NY argues that Urban did not satisfy the six-month requirement in section 447.622 because N.Y. acquired the property by foreclosure on November 30, 2006— eleven days before the petition was filed— and thus it did not have the opportunity to leave the property continuously unoccupied for six months. NY claims that the plain and ordinary meaning of the statutory language: "has been continuously unoccupied by persons legally entitled to possession for at least six months prior to the filing of the petition," requires that the person currently entitled to possession must have left the property continuously unoccupied for six months.

When interpreting statutes, we must ascertain the legislature's intent from the statutory language. *Mo. Land*, 269 S.W.3d at 501–02. In doing so, we give words their plain and ordinary meanings if they are not defined in the statute. *Id.* "When the legislat[ure]'s intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied." *Stotts v. Progressive Classic Ins. Co.*, 118 S.W.3d 655, 664 (Mo.App. W.D.2003) (internal quotation marks and citation omitted). We cannot read into a statute language that is

contrary to its plain meaning. *Kearney Special Road Dist. v. County of Clay*, 863 S.W.2d 841, 842 (Mo. banc 1993).

■ The phrase "continuously unoccupied by persons" is not defined in the statute. Nor have previous cases interpreted this language. In adverse possession cases, the root word "continuous," however, has been interpreted to mean "without lapse, uninterrupted, for the entire statutory period." *Flowers v. Roberts*, 979 S.W.2d 465, 470 (Mo.App. E.D.1998). "Continuous possession" is shown by evidence that the possessor has occupied the land consecutively for ten years. *Id.* To establish the ten-year period, a possessor is allowed to use their predecessors' continued possession in a process known as tacking. *Id.* Tacking is the "joining of consecutive periods of possession *by* different *persons* to treat the periods as one continuous period," especially "to establish continuous adverse possession for the statutory period." BLACK'S LAW DICTIONARY 1465 (7th ed.1999) (emphasis added). When the legislature enacts a statute referring to terms that have been assigned judicial meaning, we presume the legislature acted with knowledge of that interpretation. *St. Joseph Light & Power Co. v. Nodaway Worth Elec. Coop., Inc.*, 822 S.W.2d 574, 576 (Mo.App. W.D.1992). Accordingly, the phrase "continuously unoccupied" combined with the phrase "by persons" indicates the legislature's intent to combine any abandonment by all owners of the property including the current and former owners during a six-month period. Thus, the trial court did not err in finding that Urban satisfied the six-month requirement, even though N.Y. had the right to possess the property only eleven of those days.

■ Next, N.Y. argues that Urban is not an organization as defined in section 447.620. Section 447.620(5) defines organization as "any Missouri not-for-profit organization validly organized pursuant to law and whose purpose includes the provision or enhancement of housing opportunities in its community and which has been incorporated for at least six months." NY argues that Urban is not an appropriate "organization" because Urban's articles of incorporation list its purpose as "neighborhood preservation" rather than "the provision or enhancement of housing opportunities."

"Include" means "[t]o contain as a part of something." BLACK'S LAW DICTIONARY 766 (7th ed.1999). "Whose purpose includes" permits an organization to have several listed purposes, including "provision or enhancement of housing opportunities." It also permits the organization to have a broad purpose that includes "the provision or enhancement of housing opportunities." Thus, by using the term "include," the statutory language cannot be limited to those organizations whose articles of incorporation identify their purpose as "the provision or enhancement of housing opportunities." Urban's listed purpose was "neighborhood preservation." As N.Y. concedes, this purpose could include "the provision or enhancement of housing opportunities." Thus, the trial court properly declared and applied the law when it found that Urban was an appropriate not-for-profit organization under the statute. NY's first and second points are denied.

■ In its third point, N.Y. argues that the trial court erred in awarding Urban the full amount of $114,439.52 because the award was against the weight of the evidence. NY claims that the award was improper because Urban's receipts only supported an award of $88,687.00. Additionally, N.Y. argues the trial court erred because Urban was not entitled to collect a separate contractor's fee or management fee. NY claims that awarding such fees

was improper because Urban was not a contractor and did not rent the property to anyone to support a management fee.

■ First, receipts are not necessarily needed to support the valuation that a witness places on labor and materials. *Wallace v. Snider*, 204 S.W.3d 299, 305 (Mo.App. S.D.2006) ("Value of manual labor is a matter of common knowledge sufficient to permit the trial court to consider its worth in assessing damages"). Second, section 447.638 directs the court to determine the proper compensation based on the organization's "reports to the court." Section 447.638, in relevant part, states that "[i]f the court determines that the rehabilitation work has been completed by the organization ... the court shall then determine proper compensation to the organization for its expenditures, including management fees, based on the organization's reports to the court." Because Urban submitted reports to the court and its witness testified that the reports adequately reflected its expenses, there was sufficient evidence supporting the trial court's decision. Hence, the trial court's decision was not against the weight of the evidence.

■ Third, a contractor's fee is a reasonable expense for a rehabilitation project that involves several subcontractors. Section 447.638 provides for "proper compensation" for an organization's expenses. It does not matter that Urban was not the general contractor. Urban testified that it hired a general contractor to oversee the repairs for the rehabilitation, and the rehabilitation was completed. Thus, the evidence supported compensation to Urban for an expenditure of a contractor's fee. However, the evidence does not support an expenditure of a management fee. Thus, the trial court erred in compensating Urban for a management fee.

Accordingly, the management fee of $8,151.74 is deducted from the award of $114,439.52. The remaining damages are permissible expenditures and supported by the evidence. This point is granted in part.

## Conclusion

For the foregoing reasons, we affirm in part and reverse in part. We remand to the trial court to reduce the award of $114,439.52 by $8,151.74.

AHUJA, P.J. and LOWENSTEIN, J. concur.