

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **NEIGHBORHOODS UNITED,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD87236** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **JULY 29, 2025** |
| **MONIQUE VAUGHN,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Jessica Agnelly, Judge

Before Division Three:  Mark D. Pfeiffer, Presiding Judge, Cynthia L. Martin, Judge and
Janet Sutton, Judge

Monique Vaughn ("Vaughn") appeals from the trial court's judgment regarding a

tract of real property subject to the Missouri Abandoned Housing Act.[1]  The judgment

granted Vaughn's request for restoration of possession of the property pursuant to section

447.638 conditioned on Vaughn reimbursing Neighborhoods United for approved costs

to rehabilitate the property in the amount of $184,969.18.  Vaughn asserts that the trial

---

[1]Sections 447.620 through 447.640.  All statutory references are to RSMo 2016 as
supplemented through April 26, 2024, the date of the judgment, unless otherwise
indicated.

court committed error: (1) in denying Vaughn's original motion to restore possession of the property without holding a statutorily required hearing; and (2) in calculating the amount of the reimbursement that Vaughn had to pay Neighborhoods United before she could resume possession of the property. Finding no reversible error, we affirm.

**Factual and Procedural Background[2]**

On September 16, 2022, Neighborhoods United, a Missouri not-for-profit corporation organized and existing for the purpose of providing and enhancing housing opportunities, filed a petition in the Jackson County Circuit Court ("trial court") pursuant to section 447.622. The petition alleged that a home located at 7330 Flora Avenue, Kansas City, Missouri ("Property")[3] had been continuously unoccupied by persons with lawful possession for at least six months, that taxes assessed on the Property were delinquent, and that the Property was a nuisance and blight to the surrounding area. The petition further alleged that Neighborhoods United intended to rehabilitate the Property. Neighborhoods United's petition asked the trial court to declare that the Property had been abandoned, to approve its rehabilitation plan, to grant it temporary possession of the Property, and to direct the court administrator to issue a deed conveying title of the

---

[2]"In the appeal of a bench-tried case, we view the evidence and reasonable inferences that may be drawn therefrom in the light most favorable to the judgment, disregarding evidence and inferences to the contrary." *Copper v. Ringen*, 671 S.W.3d 409, 412 n.1 (Mo. App. W.D. 2023) (quoting *Sweeney v. Ashcroft*, 652 S.W.3d 711, 721 (Mo. App. W.D. 2022)).

[3]The Property is legally described as:

The North 20 feet of Lot 1088 and the South 32.50 feet of Lot 1089, MARLBOROUGH HEIGHTS, a subdivision in Kansas City, Jackson County, Missouri, according to the recorded plat thereof.

Property to Neighborhoods United upon completion of rehabilitation if no owner regained the right to possession pursuant to section 447.638.

The petition named Vaughn and the estate of her father, as each owned a one-half interest in the Property. The petition also named the City of Kansas City, as the Property was subject to liens in the City's favor for unpaid sewer and water service. After the petition was filed and served, Neighborhoods United secured an order from the trial court permitting it to enter the Property in order to develop a rehabilitation plan and to secure the Property.

The trial court held a rehabilitation proposal hearing on February 1, 2023. Neighborhoods United's executive director ("Executive Director"), who is also the principal of Kimble's Design and Contracting Company ("Kimble's"), was the only witness. The Executive Director testified that the Property had been abandoned for approximately twenty years and needed significant rehabilitation. According to the Executive Director, the Property had been overtaken by animals, vandalized by people stealing copper, and damaged by smoke and fire. The Executive Director testified that the interior of the Property needed to be gutted and remodeled. The Property also required repairs to the exterior, including concrete work, landscaping, and a new roof, gutters, and garage doors. The Executive Director testified that he had prepared an estimate for the Property's rehabilitation on behalf of Kimble's in the amount of $76,015. The evidence later established that this estimate was prepared before the Executive Director or Kimble's fully appreciated the extent of required rehabilitation.

On February 2, 2023, the trial court entered an order finding that the Property is abandoned; that the Property has been continuously unoccupied by persons with lawful possession for more than six months; that the Property's real estate taxes are delinquent; and that the Property is a nuisance and a blight on the surrounding area. The order found that Neighborhoods United had demonstrated at the rehabilitation proposal hearing that it has adequate resources to rehabilitate the Property and that its rehabilitation plan is feasible. The order approved Neighborhoods United's rehabilitation plan, granted Neighborhoods United temporary possession of the Property, and ordered Neighborhoods United to file quarterly reports pursuant to section 447.636.

On March 14, 2023, Vaughn, in her individual capacity and in her capacity as the personal representative of her father's estate, filed a motion for restoration of possession of the Property pursuant to section 447.638 ("March 2023 Motion for Possession"). The March 2023 Motion for Possession alleged that, after taking possession of the Property, Neighborhoods United removed personal property and deposited the personal property on the Property's front lawn. The March 2023 Motion for Possession alleged that Vaughn has the resources necessary to rehabilitate the Property. The March 2023 Motion for Possession asked the trial court to vacate its February 2, 2023 order and to restore possession of the Property to Vaughn to be rehabilitated.

On April 17, 2023, the trial court entered an order denying the March 2023 Motion for Possession. No hearing was conducted in advance of the entry of this order, although Vaughn had requested a hearing in the March 2023 Motion for Possession.

4

On August 8, 2023, Vaughn filed a second request for restoration of possession of property pursuant to section 447.638 ("August 2023 Petition for Possession"). The August 2023 Petition for Possession disputed "any and all expenditures paid by [Neighborhoods United] . . . to Kimble's . . . as [Neighborhoods United] has failed to file all quarterly reports to the [trial court] as required by [section] 447.636." The August 2023 Petition for Possession asked the trial court to hold a hearing "to determine any compensation . . . in accordance with [sections] 447.636-447.638, so that [Vaughn] can regain possession of [the Property] as she has the capacity and the resources to complete rehabilitation of the Property."

Ten days later, Neighborhoods United filed an answer to the August 2023 Petition for Possession, and alleged that its rehabilitation of the Property was approximately 95 percent complete, and that approximately $158,000 had been spent to date on the rehabilitation. On August 28, 2023, Neighborhoods United filed its first, and only, report of rehabilitation pursuant to section 447.636. The report included an invoice from Kimble's in the amount of $158,965, which itemized the work completed to that point.

On October 31, 2023, Neighborhoods United filed a motion for judgment granting a court administrator's deed ("Motion for a Court Administrator's Deed"). Neighborhoods United alleged that it had completed rehabilitation of the Property, and asked for the entry of a judgment directing the court administrator to execute a deed transferring title of the Property to Neighborhoods United. While the Motion for a Court Administrator's Deed was pending, the estate of Vaughn's father was closed, and Vaughn became the sole owner of the Property.

5

The trial court held a hearing on March 22, 2024, on Vaughn's August 2023 Petition for Possession and on Neighborhoods United's Motion for a Court Administrator's Deed. The trial court reviewed photographs that depicted the condition of the Property before and after its rehabilitation. The trial court reviewed an October 2023 invoice from Kimble's that reflected that the actual cost to complete the rehabilitation of the Property had been $186,355, plus a 15 percent management fee of $25,953.25, for a total of $214,308.25. The Executive Director testified that the standard construction management fee in the industry is 20 percent. The trial court reviewed a copy of a check in the amount of $6,410.61 from Neighborhoods United to the City of Kansas City to secure a release of its lien on the Property, and a copy of check in the amount of $912.32 from Neighborhoods United to "Collections Department" to pay delinquent 2022 real estate taxes. The trial court also reviewed a letter approving Vaughn for a $133,000 loan to rehabilitate the Property. In addition, Vaughn testified that she has the financial means to reimburse Neighborhoods United for rehabilitation of the Property, though she argued that the amount Neighborhoods United was attempting to recover for rehabilitation was "astronomical." Vaughn testified that she had previously received a $70,000 bid that would have been sufficient to render the Property habitable.

The trial court issued its judgment on April 26, 2024 ("Judgment"). The Judgment found that other than a second "roofing cost" totaling $6,225, and half of the "electrical wiring" cost, the itemized costs submitted in Neighborhoods United's August 28, 2023 rehabilitation report were reasonable. The Judgment found that additional costs for

6

outside railing and sheetrock incurred since the rehabilitation report was filed, and included in Kimble's October 2023 invoice, were reasonable. The Judgment thus found that Neighborhoods United incurred reasonable costs to rehabilitate the Property in the total amount of $154,475, and that this amount should be increased by a 15 percent management fee. The Judgment also found that Neighborhoods United was entitled to be reimbursed $6,410.61 for the amount paid to release the City of Kansas City's lien, and $912.32 for the amount paid for delinquent 2022 taxes. Collectively, the Judgment found that Neighborhoods United was entitled to be reimbursed in the total amount of $184,969.18.

The Judgment granted Vaughn's August 2023 Petition for Possession to the extent it requested restoration of possession of the Property; ordered Vaughn to reimburse Neighborhoods United $184,969.18 within sixty days as a condition to resuming possession of the Property; and denied Neighborhoods United's Motion for a Court Administrator's Deed.

Vaughn appeals. Additional facts will be addressed as relevant to the discussion of Vaughn's points on appeal.

### Standard of Review

Our review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Nat'l Hist. Soul Jazz Blues Walker Found. v. AltCap*, 681 S.W.3d 202, 209 (Mo. App. W.D. 2023). We will affirm the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy*, 536

7

S.W.2d at 32. The appellant bears the burden of proving trial court error. *Nat'l Hist. Soul Jazz Blues Walker Found.*, 681 S.W.3d at 209.

In reviewing the trial court's factual determinations, we view the evidence and reasonable inferences drawn therefrom in the light most favorable to the judgment. *Id.* "The trial [court] has absolute discretion as to the credibility of witnesses and the weight of their testimony is a matter for the trial court, and its findings on witness credibility are never reviewable by the appellate court." *Id.* (quoting *Blair v. Blair*, 147 S.W.3d 882, 886 (Mo. App. W.D. 2004)). Challenges to the trial court's declarations of law or application of law are reviewed *de novo*. *Id.*

## Analysis

Vaughn presents two points on appeal. We address them separately.

### Point One: Failure to Conduct a Hearing Before Denying March 2023 Motion for Possession

In her first point on appeal, Vaughn asserts that the trial court committed error in denying her March 2023 Motion for Possession without first conducting a hearing as required by section 447.638 ("Point One"). Vaughn claims that, had a hearing been conducted, she "would have been able to prove in March 2023 [that] she had the capacity and the resources to complete the rehabilitation of the Property without the loss of all of her personal property and without the trespass and interference of Neighborhoods United." [Appellant's Brief, p. 23] Vaughn argues that, had the trial court conducted a hearing and found Vaughn's evidence credible, the trial court would have restored Vaughn's possession of the property; she would have rehabilitated the Property; she

would have compensated Neighborhoods United for its partial rehabilitation of the Property as the trial court deemed reasonable and necessary; and the case would have been terminated.

Vaughn filed the March 2023 Motion for Possession pursuant to section 447.638, which provides, in relevant part, that "[t]he owner [of property subject to the Missouri Abandoned Housing Act] may petition the circuit court for restoration of the property and, upon due notice to the plaintiff organization [previously granted possession for the purpose of rehabilitating the property], for a hearing on such petition." The trial court did not conduct a hearing on the March 2023 Motion for Possession though a hearing was requested in the Motion. Instead, the trial court entered an order denying the Motion, noting that Neighborhoods United "was granted temporary possession" of the Property on February 2, 2023. Vaughn took no action to bring the error of denying the Motion without a hearing to the trial court's attention.[4]

In order to preserve a claim that a trial court has failed to comply with a statutory mandate, the appellant must have timely raised the error in the trial court. *In Interest of K.G.K.*, 709 S.W.3d 446, 451 (Mo. App. S.D. 2025). To timely raise an error in the trial court, "a party, at the time the ruling or order of the court is made or sought, [must] make[] known to the court the action that the party desires the court to take or objections to the action of the court and grounds therefor." Rule 78.09.[5] In other words, a party

_____

[4]In the Judgment, the trial court noted that it is "unclear" why a hearing was not granted before the March 2023 Motion for Possession was denied.
[5]All Rule references are to *Missouri Court Rules, Volume I--State, 2024* unless otherwise noted.

must call the alleged error to the trial court's attention and give the trial court an opportunity to rule on the question. *In Matter of Spruill*, 709 S.W.3d 438, 442 (Mo. App. S.D. 2025). "Because appellate courts merely review for trial errors, there can be no review of a matter which has not been presented to or expressly decided by the trial court." *Id.* at 443.

Vaughn acknowledges that she never raised this issue with the trial court, but argues nonetheless that Point One is preserved for appellate review pursuant to section 510.310 because it questions the sufficiency of the evidence to support the Judgment. This is patently incorrect. Point One does not challenge the sufficiency of the evidence, and instead argues that the trial court committed legal error by denying the March 2023 Motion for Possession without first conducting a hearing as required by section 447.638.[6] Vaughn's Point One on appeal is not preserved for appellate review.

Even if we could overlook the obvious preservation issue attendant to Point One, we would reject Vaughn's request to reverse the Judgment and remand for the trial court

---

[6]Thus, Vaughn's brief does not conform to Rule 84.04(e)'s requirement that the argument for each claim of error include "a concise statement describing whether the error was preserved for appellate review; [and] if so, how." In addition to this violation of Rule 84.04, Neighborhoods United correctly points out that Vaughn's Brief fails to comply with Rule 84.04(c) in that the statement of facts does not include specific page references to the relevant portion of the record on appeal and is not "a fair and concise statement of the facts relevant to the questions presented for determination without argument." Neighborhoods United also correctly asserts that neither of Vaughn's points relied on identify the applicable *Murphy v. Carron* ground for reversal in violation of Rule 84.04(d)(1). However, Vaughn's brief is not "so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (quoting *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998)). As such, we have elected to review the merits of Vaughn's appeal.

10

to conduct a section 447.638 hearing on her first request for restoration of possession of the Property. Vaughn filed a second request for restoration of possession pursuant to section 447.638 (the August 2023 Petition for Possession) and requested a hearing. Her second request for restoration of possession made no mention of the denial of her first request without a hearing. On March 22, 2024, Vaughn was afforded a hearing on the August 2023 Petition for Possession, and was thus afforded the very relief she seeks on appeal.

At this juncture, reversing the Judgment to hold an additional hearing could have no effect. While the timing of the statutorily required hearing was delayed, the issues before the trial court were the same: "whether the owner has the capacity and the resources to complete rehabilitation of the property if such work has not been completed by the organization," and if such work has been completed by the organization, the "proper compensation to the organization for its expenditures, including management fees, based on the organization's report to the court." *See* section 447.638. By the time of the March 22, 2024 hearing, Vaughn's ability to rehabilitate the Property on her own had been rendered moot as Neighborhoods United had completed the rehabilitation of the Property. And though the amount expended by Neighborhoods United to partially rehabilitate the Property as of March 2023 would no doubt have been less than the amount subsequently spent to fully rehabilitate the Property as approved in the Judgment, the fact remains that the rehabilitation work is now completed. Vaughn's ability to secure restoration of possession of the Property requires her to reimburse the amount incurred to fully rehabilitate the Property, rendering the amount incurred as of March 2023

11

irrelevant. The trial court's error in failing to conduct a statutorily required hearing on the March 2023 Motion for Possession has been rendered harmless. *See Lin v. Clark*, 666 S.W.3d 270, 277 (Mo. App. W.D. 2023) ("This Court will find reversible error only when it materially affects the merits of the action with a firm belief that the . . . judgment is wrong. In other words, a party must not only demonstrate error but also show prejudice.") (quoting *Lollar v. Lollar*, 609 S.W.3d 41, 47 (Mo. banc 2020)) (citation omitted).

Point One is denied.

### Point Two: Evidentiary Support for the Judgment

Vaughn's second point on appeal challenges the evidentiary support for the Judgment's reimbursement award to Neighborhoods United in the amount of $184,969.18 ("Point Two"). Point Two reads as follows:

> The trial court erred in ruling that Neighborhoods United should be reimbursed in the amount of $184,969.18 **because** there is a lack of evidence to substantiate the trial court's finding when the judgment is against the weight of admitted evidence and stipulations from both parties **in that** viewing the evidence in the light most favorable to the trial court, the original rehabilitation plan of Neighborhoods United was approved in the amount of $76,015.00, the failure of Neighborhoods United to file required quarterly reports of progress and costs thereof, Neighborhoods United's failure to submit reliable evidence at trial above $11,617.38 left the trial court with no evidence within which to arrive at the Vaughn reimbursement sum of $184,969.18, which in and of itself does not key into any evidence submitted in the case and is not within the range of credible admitted evidence.

Point Two is far from a model of clarity.

Rule 84.04(d)(1) requires a point relied on to include three components: (1) "[i]dentify the trial court ruling or action that the appellant challenges;" (2) "[s]tate

12

concisely the legal reasons for the appellant's claim of reversible error; and" (3) "[e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Point Two identifies the reimbursement award as the trial court action Vaughn challenges, but asserts that the legal basis for the challenge is both "a lack of evidence to substantiate" the award, and a claim that the award is "against the weight of admitted evidence."

These are two distinct claims of legal error. *See Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 783 n.4 (Mo. App. W.D. 2019) ("[A] substantial-evidence challenge . . . and an against-the-weight-of-the-evidence challenge . . . are distinct claims.") (quoting *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014)). "A challenge of 'insufficient evidence' requires the appellant to demonstrate that there was no substantial evidence to support the trial court's decision as opposed to a challenge that the trial court's judgment was 'against the weight of the evidence,' which presupposes that there is sufficient evidence to support the judgment." *Cerna-Dyer v. Dyer*, 540 S.W.3d 411, 415 (Mo. App. W.D. 2018). A point relied on that collapses a challenge to the sufficiency of the evidence to support a judgment with a claim that the judgment is against the weight of the evidence is impermissibly multifarious. *Millstone Prop. Owners Ass'n v. Nithyananda Dhyanapeetam of St. Louis*, 701 S.W.3d 633, 641 n.5 (Mo. banc 2024). Multifarious points relied on preserve nothing for appeal and are subject to dismissal. *Carron v. Schabbing*, 707 S.W.3d 807, 811 n.1 (Mo. App. E.D. 2024).

We nonetheless elect to gratuitously review Vaughn's Point Two on appeal because the argument developing the point is limited to challenging whether there is

13

substantial evidence to support the reimbursement award. "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the [trial] court's judgment." *Ivie*, 439 S.W.3d at 199. Evidence has a probative force if it makes the existence of a material fact more or less likely. *Id.* To prevail on a substantial-evidence challenge, the appellant "must demonstrate that there is no evidence in the record tending to prove a fact that is necessary to sustain the [trial] court's judgment as a matter of law." *Id.* at 200. In the argument portion of her Brief, Vaughn complains: (1) that the trial court did not have evidence to determine rehabilitation expenses because Neighborhoods United did not file quarterly reports as required by section 447.636; (2) that no evidence supported a reimbursement award greater than $76,015, the amount approved by the trial court in its February 2, 2023 order; (3) that no evidence supported the inclusion of a 15 percent management fee in the reimbursement award; and (4) that no evidence supported a reimbursement award beyond the amount of $20,922.94 reflected in invoices and receipts entered into evidence at the March 22, 2024 hearing. We address these contentions separately.

Vaughn's second and fourth contentions are plainly without merit when the "substantial evidence" analytical framework is applied. Section 447.638 addresses the calculation of rehabilitation expenses following the complete rehabilitation of a property by a not-for-profit organization pursuant to the Missouri Abandoned Housing Act. Section 447.638 provides in relevant part:

> If the court determines that the rehabilitation work has been completed by the organization . . . , the court shall then determine proper compensation to the organization for its expenditures, including management fees, based on

14

the organization's reports to the court. The court, in determining the proper compensation to the organization, may consider income or receipts received from the property by the organization.

During the March 22, 2024 hearing, the trial court had the benefit of Neighborhoods United's August 28, 2023 rehabilitation report which advised that the rehabilitation work was close to being complete, and which attached a detailed invoice from Kimble's in the amount of $158,965. In addition, during the March 22, 2024 hearing, the trial court had the benefit of Kimble's final invoice, which was filed on October 31, 2023 with Neighborhoods United's Motion for a Court Administrator's Deed, and which added the cost of additional completed work, including an amount for exterior railing and interior sheetrock. The final invoice also included a 15 percent project management fee charged by Kimble's. The trial court heard testimony from the Executive Director about the assumptions made by Neighborhoods United regarding the state of the Property when submitting its initial rehabilitation plan to the trial court; the true condition of the Property before its rehabilitation, as discovered by Neighborhoods United when it began rehabilitating the Property; the work necessary to make the Property habitable; and the expenses incurred in rehabilitating the Property. In addition, the trial court received exhibits showing the physical condition of the Property before and after its rehabilitation.

This evidence was more than substantial to support the trial court's ultimate determination that the reasonable cost to rehabilitate the Property, including a 15 percent fee and amounts paid to secure the release of a lien and to pay delinquent taxes, was

15

$184,969.18. Vaughn's second and fourth challenges to the sufficiency of the evidence to support the reimbursement award are without merit.

Vaughn's first challenge to the sufficiency of the evidence to support the awarded reimbursement amount is also without merit. Vaughn complains that because Neighborhoods United failed to file quarterly reports required by section 447.636 and referenced in section 447.638, the trial court had "no evidence" to support the reimbursement award. Vaughn is correct that section 447.636 requires a not-for-profit organization rehabilitating a parcel of property to "file a quarterly report of its rehabilitation and use of the property, including a statement of all expenditures made by the organization and all income and receipts from the property for the preceding quarters." Vaughn is also correct that Neighborhoods United did not abide by this statutory directive, and instead filed a report on August 28, 2023, when the rehabilitation work was almost 95 percent complete.

However, Vaughn cites no authority for the proposition that the failure to file quarterly reports as required by section 447.636 forecloses the right to recover costs reasonably incurred to rehabilitate a property as a matter of law. Certainly, nothing in section 447.636 suggests that a penalty will be imposed if quarterly reports are not filed. We do not find that Neighborhoods United was foreclosed as a matter of law from recovering its reasonable rehabilitation costs merely because it failed to file quarterly reports, and instead relied on a single report filed when rehabilitation was approximately 95 percent complete, as supplemented by an invoice reflecting additional rehabilitation costs thereinafter incurred. Substantial evidence supported the reimbursement award

16

despite Neighborhoods United's failure to submit quarterly rehabilitation reports. Vaughn's first contention challenging the sufficiency of the evidence to support the reimbursement award is without merit.

Finally, Vaughn's third contention complains that no evidence supported including a 15 percent management fee in the amount of the reimbursement award. Vaughn's contention is facially belied by section 447.638 which expressly provides that a trial court "shall" determine proper compensation for completed rehabilitation work, and "shall" award a management fee. In *Urban Renewal of K.C. v. Bank of New York*, 289 S.W.3d 631 (Mo. App. W.D. 2009), the owner of property argued that the not-for-profit organization that rehabilitated the property was not entitled to either a contractor's fee or a management fee because the not-for-profit organization was not a contractor, and did not rent the property to any tenants as to support an award of a management fee. We held that "proper compensation," as the phrase is used in section 447.638, includes a contractor's fee, regardless of whether the not-for-profit organization was a general contractor, if the evidence establishes that the not-for-profit organization hired a general contractor to oversee the rehabilitation. *Id.* at 636. We also held that the evidence did not support a "management fee" because the not-for-profit organization never rented the property to anyone. *Id.*

Here, the evidence established that Neighborhoods United retained Kimble's as a general contractor. It was thus proper for the trial court to include a 15 percent "contractor's fee" in the reimbursement award. Though the Judgment referred to the fee as a "management fee," that is a harmless matter of semantics. It is clear from the

17

evidence that the trial court awarded the 15 percent fee as a contractor's fee, as we found to be appropriate in *Urban Renewal*. The Judgment's inclusion of a 15 percent fee in the reimbursement award was supported by substantial evidence.

Point Two is denied.

## Conclusion

The Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur